# In the United States Court of Federal Claims

No. 19-27C
(E-Filed: January 17, 2019)[1]

| | |
|---|---|
| NORTH SOUTH CONSULTING GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> DYNAMIC SYSTEMS TECHNOLOGY, INC., <br><br> Intervenor-defendant. | Post-Award Bid Protest; Review of Proposal Evaluation and Award Decision; Request for Temporary Restraining Order and Preliminary Injunction Denied. |

<u>Aron C. Beezley</u>, Washington, DC, for plaintiff.  <u>Patrick R. Quigley</u> and <u>Sarah S. Osborne</u>, of counsel.

<u>Joseph A. Pixley</u>, Trial Attorney, with whom were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Robert E. Kirschman, Jr.</u>, Director, <u>Douglas K. Mickle</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  <u>Major Felix S. Mason</u>, United States Army, Fort Belvoir, VA, of counsel.

<u>Janice Davis</u>, Washington, DC, for intervenor-defendant.

---

[1]    This opinion was issued under seal on January 11, 2019.  Pursuant to ¶ 2 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged.  No redactions were proposed by the parties.  Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

<u>OPINION AND ORDER</u>

CAMPBELL-SMITH, Judge.

This post-award bid protest is before the court on plaintiff's motion for a temporary restraining order (TRO) and preliminary injunction.  <u>See</u> ECF No. 6. The court has reviewed the following documents:  the complaint, ECF No. 1; intervenor-defendant's response brief, ECF No. 17; defendant's response brief, ECF No. 18; and, plaintiff's reply brief, ECF No. 19.  Oral argument was deemed unnecessary and inadvisable, given the urgency of the need for a ruling from the court.  For the reasons set forth below, plaintiff's motion for a TRO and preliminary injunction is **DENIED**.

I.     Background

       A.      Procurement Overview[2]

       The procuring agency here is the United States Army National Guard (National Guard or agency).  ECF No. 1 at 4.  The competition that gives rise to this protest, under Solicitation No. W9133L-18-R-0001, is for services to support child and youth programs for the National Guard.  <u>Id.</u> at 1, 5.   This procurement is set aside for small businesses.  ECF No. 1-2 at 2.  The solicitation sought proposals for one base year of services, and up to four option years.  ECF No. 1 at 5. Although plaintiff teamed with Cognitive Professional Services, Inc., the incumbent provider of these services for its proposal, the proposal of Dynamic Systems Technology, Inc. (Dynamic or Dystech) was selected for award instead. <u>Id.</u> at 1, 4.

       Of particular interest here, four evaluation factors were set forth in the solicitation, in descending order of importance:  (1) technical approach; (2) management approach; (3) past performance; and, (4) price.  <u>Id.</u> at 5.  Each of the first two factors would receive an adjectival rating of outstanding, good, acceptable, marginal or unacceptable.  <u>Id.</u> at 9.  Past performance would be assessed to provide substantial confidence, satisfactory confidence, limited confidence, no confidence or unknown confidence.  <u>Id.</u> at 11.  Award would be made to the "best value" proposal.  <u>Id.</u> at 5.

       B.      Evaluation of Proposals and Award

_____

[2]     The facts recited here are taken primarily from the complaint and attachments thereto.

Eight offerors responded to the solicitation.  ECF No. 1-2 at 2.  Among the offerors were plaintiff, North South Consulting Group, LLC (North South or NSCG), and Dynamic.  Id.  Within the specific evaluation factors for technical approach and management approach, the agency identified "significant strengths, strengths, weaknesses, deficiencies and uncertainties" in each offeror's proposal. Id.  In turn, each offeror's technical approach and management approach received an overall adjectival rating, as noted above.  Id.  Dynamic's winning proposal had an evaluated price of $44,600,442, whereas the evaluated price of North South's proposal was $45,629,140, for five and a half years of potential contract performance.  Id.; see also ECF No. 18 at 5.

The agency's contracting officer, who also was the Source Selection Authority (SSA), chose Dynamic's proposal as providing the best value to the National Guard.  ECF No. 1-2 at 3.  The offerors were notified of the award decision on September 10, 2018.  Id.  North South filed a protest with the Government Accountability Office (GAO) on September 20, 2018.  ECF No. 1 at 13.

C.      Results of North South's Protest before the GAO

In its decision, the GAO generally addressed three challenges to the National Guard's evaluation of proposals and the contract award to Dynamic.[3] First, the GAO determined that the agency's evaluation of the significance of retention statistics for NSCG's prior contract performance, and for NSCG's subcontractor's prior contract performance, was not unreasonable.  ECF No. 1-2 at 3-4.  Second, the GAO found that the agency had not strayed from the evaluation scheme set forth in the solicitation when making its best value determination, nor had the agency unreasonably assigned a weakness to NSCG for its use of outsourcing.  Id. at 4-8.  Third, the GAO held that an error in the evaluation of the proposals of Dynamic and North South did not prejudice North South, and thus could not provide a basis to sustain the protest.  Id. at 8-9.  North South's GAO protest was denied on December 27, 2018, and this suit followed.  Id. at 1.

II.     Legal Standards

A.      Bid Protest Standard of Review

---

[3]      Like plaintiff, the court cites to the redacted version of the GAO decision attached to the complaint, ECF No. 1-2, not to the redacted version of the GAO decision available on Westlaw.  See N. S. Consulting Grp., LLC, B-416849, 2018 WL 6931338 (Comp. Gen. Dec. 27, 2018).

As the United States Court of Appeals for the Federal Circuit has stated, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2012)]:  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)).  Under this standard, a procurement decision may be set aside if it lacked a rational basis or if the agency's decision-making involved a clear and prejudicial violation of statute, regulation or procedure.  Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1085-86 (Fed. Cir. 2001) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)).  "The arbitrary and capricious standard applicable [in bid protests] is highly deferential."  Advanced Data Concepts, 216 F.3d at 1058.

De minimis errors in the procurement process do not justify relief. Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 1000 (Fed. Cir. 1996) (citing Andersen Consulting v. United States, 959 F.2d 929, 932-33, 935 (Fed. Cir. 1992)). The bid protest plaintiff bears the burden of proving that a significant error marred the procurement in question.  Id. (citing CACI Field Servs., Inc. v. United States, 854 F.2d 464, 466 (Fed. Cir. 1988)).  Examples of arbitrary and capricious agency action include "when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (alteration in original).  The court will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974) (citation omitted).

The court gives great deference to an agency's technical evaluation of an offeror's proposal.  Textron, Inc. v. United States, 74 Fed. Cl. 277, 297 (2006). "[T]echnical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess."  E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996) (citations omitted); Omega World Travel, Inc. v. United States, 54 Fed. Cl. 570, 578 (2002) ("It is well settled that contracting officers are given broad discretion with respect to evaluation of technical proposals." (citing E.W. Bliss, 77 F.3d at 449)).  "[W]here an agency's decisions are highly technical in nature, . . . judicial restraint is appropriate and proper." Electro-Methods, Inc. v. United States, 7 Cl. Ct. 755, 762 (1985) (citing Isometrics v. United States, 5 Cl. Ct. 420, 423 (1984)).

The higher the degree of discretion allotted the contracting officer, the more difficult it is for a protestor to prove that the procurement decision was arbitrary and capricious. Burroughs Corp. v. United States, 617 F.2d 590, 597 (Ct. Cl. 1980) (citation omitted). Best value contract awards give a contracting officer more discretion than awards based on price alone. Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (citing E.W. Bliss, 77 F.3d at 449). The protestor's burden is especially heavy in negotiated, best value procurements. E.g., Croman Corp. v. United States, 106 Fed. Cl. 198, 216 (2012) (citing DynCorp Int'l LLC v. United States, 76 Fed. Cl. 528, 537 (2007), aff'd, 724 F.3d 1357 (Fed. Cir. 2013).

"'If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.'" Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). If, on the other hand, the protestor has shown a significant error in the procurement process, the court must determine whether that error prejudiced the protestor, because both error and prejudice are required for the protestor to prevail. Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996) (citing Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996)). Plaintiff bears the burden of proof to establish prejudice. Bannum, Inc. v. United States, 404 F.3d 1346, 1353 (Fed. Cir. 2005) (citations omitted). "Prejudice is a question of fact." Id. (citing Advanced Data Concepts, 216 F.3d at 1057).

B.    Injunctive Relief

As the Federal Circuit has held:

> In deciding whether a permanent injunction should issue, a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987)). The standard for a TRO or preliminary injunction is the same, except that likelihood of success on the merits -- instead of actual success on the merits -- must be shown by the plaintiff. Id. at 1229.

III.    Analysis

In the complaint, plaintiff presents three issues for the court's consideration. First, in Count I, plaintiff asserts that there was error and disparate treatment of Dynamic and NSCG in the evaluation of the technical approach and management approach aspects of their proposals.  ECF No. 1 at 14-18.  Second, in Count II, plaintiff asserts that these procurement errors prejudiced North South.  Id. at 18-22.  Finally, in Count III, plaintiff contends that preliminary and permanent injunctive relief are warranted to prevent economic harm to plaintiff and its teaming partner.  Id. at 22-25.  Before turning to plaintiff's specific challenges to the contract award, the court presents a summary of the agency's evaluation of proposals, focusing on the technical approach and management approach evaluation factors (the two most important evaluation factors), followed by a summary of the SSA's best value determination.

A.    Evaluation of Proposals:  Technical Approach and Management Approach[4]

As a threshold matter, the court notes that the solicitation provides for an "integrated assessment" of proposals.  ECF No. 1 at 6.  Further, both the technical approach and management approach evaluation factors share a goal of assessing the contractor's ability to successfully perform the requirements stated in the Performance Work Statement (PWS).  See id. (stating that one of the aspects of the evaluation of the offeror's technical approach would be to "evaluate the offeror's technical approach in terms of how well the methodology proposed will accomplish the requirements of the PWS," and that one of the aspects of the evaluation of the offeror's management approach would be to "evaluate the offeror[']s management approach to fulfill the objectives of the PWS").  In other words, there is a natural overlap between an offeror's technical approach and its management approach that is inherent in the integrated assessment of proposals submitted in response to this solicitation.  Although each offeror presented its technical approach and management approach in separate volumes, see ECF No. 1-2 at 6, the court agrees with the GAO that the agency could reasonably rely on both of these volumes in order to rate an offeror's technical approach or its management approach.

One constraint of the evaluation scheme was the relationship between the number of strengths identified by the agency for each evaluation factor, and the adjectival rating assigned as the comparative rating for that evaluation factor.  An outstanding adjectival rating must be supported by multiple strengths.  ECF No. 1 at 9.  A good adjectival rating must be supported by at least one strength.  Id.  That

---

[4]    As for the third most important evaluation factor, Dynamic's past performance was rated as providing satisfactory confidence, whereas North South's past performance was rated as providing substantial confidence, which is a higher rating for that factor.  ECF No. 1 at 12.

rule established by the solicitation was followed in this procurement decision.  See ECF No. 1-2 at 2-3.

The rating of these two critical evaluation factors, overall, was fairly close for North South and Dynamic.  Both were rated outstanding for their technical approach.  Id. at 2.  North South's outstanding rating was based on the "identification of three significant strengths, four strengths, and one weakness."  Id. at 3.  Dynamic's outstanding rating was based on the "identification of two significant strengths, and two strengths."  Id.

For the management approach factor, North South received a good rating, whereas Dynamic received an outstanding rating.  Id. at 2.  North South's good rating was based on the "identification of three strengths, two weaknesses, and one uncertainty."  Id.  Dynamic's outstanding rating was based on the "identification of two significant strengths, six strengths, one weakness, and one uncertainty."  Id.

B.     Best Value Determination

The court notes, at the outset, that contracting officers exercise broad discretion in deciding which proposal provides the best value in a best value procurement.  See, e.g., Banknote, 365 F.3d at 1355 ("It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value.") (citations omitted).  If the best value determination is grounded in reason, the court will defer to the agency's discretion in making its best value determination.  E.g., Grumman Data, 88 F.3d at 995 (citing Widnall v. B3H Corp., 75 F.3d 1577, 1580 (Fed. Cir. 1996)). Nonetheless, a best value award decision may be overturned if that decision does not conform with the evaluation factor weighting scheme set forth in the solicitation.  E.g., FirstLine Transp. Sec., Inc. v. United States, 100 Fed. Cl. 359, 376 (2011).

The SSA's best value determination is set forth in the Source Selection Decision Document (SSDD), a redacted version of which was provided by plaintiff along with its reply brief.  See ECF No. 19-1 at 1-56.  The court reproduces here a representative sample of the SSA's commentary that supports his best value determination.  The most general "best value" commentary is found in this paragraph:

In this field of competition, I found that Dystech distinguished itself as superior having submitted a proposal that was, on balance, superior to all other proposals submitted.  Those proposals that included a lower evaluated price were significantly inferior in terms of non-price factors.  N[SC]G's proposal, which was upon thorough examination

comparable in terms of the technical factor and superior in terms of past performance, nonetheless, was not found to be superior when all non-price factors were taken together, nor did it offer a more advantageous price.

Id. at 48-49.

Other comments explain why Dynamic's proposal was determined to provide better value to the agency than North South's proposal:

I see no aspect of N[SC]G's proposal that would justify award to that company at a higher price. Dystech's proposal is, on the whole, approximately equal to that of N[SC]G in terms of the Technical Factor and Superior in terms of Management. Where N[SC]G's proposal is superior in Past Performance, this superiority in the least important factor does not overcome other weaknesses and inferiority on the part of N[SC]G. Dystech is clearly a superior value to the Government based on a comparison of both price and the relevant discriminators in the proposals.

Id. at 54. This overall comparison of the proposals submitted by Dynamic and North South is buttressed by additional, more specific analysis, which addresses the strengths of each offeror's proposal as to the technical approach and management approach evaluation factors. See id. at 54-55. The SSA noted, in particular, that Dynamic's management approach was "clearly superior." Id. at 55.

The SSA concluded that "Dystech is considered to represent the best value to the Government, considering price and non-price factors." Id. at 56. In his view, "[t]aking Technical, Management and Past Performance together, Dystech has less risk and more positive elements to its proposal than that of all other offers received." Id. Moreover, "Dystech is the best value for the Government when compared with all the other proposals because it is the highest rated and second lowest priced awardable proposal." Id.

The court notes that the analytical scheme set forth in the SSDD is not in apparent conflict with the evaluation scheme set forth in the solicitation. In other words, unless plaintiff establishes that significant errors in the technical evaluation process were made, such that technical rating errors invalidate the SSA's best value determination, the best value determination, and the contract award, must stand. The court turns now to plaintiff's arguments in support of its request for a TRO and preliminary injunction.

C.      Allegations of Evaluation Error and Disparate Treatment

Plaintiff presents two arguments regarding technical ratings by the agency. Plaintiff first argues that the agency strayed from the evaluation scheme set forth in the solicitation by incorrectly applying the weighting scheme for the evaluation factors.  ECF No. 1 at 15-16.  Second, plaintiff asserts that the agency treated North South and Dynamic differently, so that unlawful disparate treatment occurred.  Id. at 16-18.  Neither argument is persuasive.

As the GAO explained in its decision, the discretion afforded source selection officials encompasses the use of "their own judgment" when weighing evaluation results and conducting a meaningful comparison of proposals.  ECF No. 1-2 at 6.  The court agrees with the GAO that the SSA here properly considered various elements of Dynamic's management approach to fully assess the rough equivalence of the outstanding adjectival ratings received by both Dynamic and North South for the technical approach factor.  As this court has often held, an agency may, in some circumstances, account for particular proposal features in more than one evaluation factor.  E.g., DM Petroleum Operations Co. v. United States, 115 Fed. Cl. 305, 311 (2014) (citing Office Depot, Inc. v. United States, 95 Fed. Cl. 517, 533 n.18 (2010)).  The court also agrees with the GAO that a qualitative evaluation of proposals is not governed by a "simple count of strengths and weaknesses."  ECF No. 1-2 at 7.  For these reasons, plaintiff's "incorrect weighting" argument is not persuasive.

The disparate treatment allegation is a closer question, but also one that cannot be resolved in plaintiff's favor.  It appears that the agency did not "discount" strengths from Dynamic's management approach, in recognition of untabulated strengths in North South's technical approach, in the same way that untabulated strengths in North South's technical approach were discounted in recognition of some of Dynamic's strengths in its management approach.  Plaintiff complains that this agency treatment was unfair, and the GAO considered this agency practice to be "flawed."  Id. at 8.

The court does not conclude, however, that the SSA's decision demonstrates that the agency committed a significant error which would merit sustaining this protest.  Equal treatment in proposal evaluation does not necessarily mean that each strength is valued exactly the same as another, or that a qualitative assessment of an evaluation factor cannot discriminate between strengths in one offeror's proposal and strengths in another.  See 48 C.F.R. § 1.102-2(c)(3) (2018) ("All contractors and prospective contractors shall be treated fairly and impartially but need not be treated the same.").  The SSA's comparison of the technical approach and management approach ratings for the proposals of North South and Dynamic is not unreasonable or unfair simply because he discounted strengths in favor of Dynamic

and did not discount strengths in favor of North South.[5]  The significance of this aspect of the evaluation process is unclear, and while it may be erroneous to some degree, plaintiff has not established that the SSA's award decision was unfair or arbitrary.[6]

Because plaintiff has not established that the SSA's best value decision was arbitrary or capricious, plaintiff has not shown likelihood of success on the merits of this protest.  The court need not address the question of prejudicial error where no error has been demonstrated.[7]  The court now turns, briefly, to the availability of injunctive relief.

      D.     Injunctive Relief

Plaintiff has not shown likelihood of success on the merits of its protest. This weighs heavily against the issuance of a TRO or preliminary injunction.  See, e.g., FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993) ("Absent a showing that a movant is likely to succeed on the merits, we question whether the movant can ever be entitled to a preliminary injunction unless some extraordinary injury or strong public interest is also shown.").  Indeed, the Federal Circuit has held that a failure to show likelihood of success on the merits is dispositive.  See Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1325 (Fed. Cir. 2004) (stating that "a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits") (citation and footnote omitted). It is not necessary, or a good use of judicial resources, to discuss every injunctive relief factor in this instance.  Because plaintiff has not shown likelihood of success on the merits of this protest, and because none of the other injunctive relief factors,

---

[5]     As intervenor-defendant points out, there is language in the SSDD that could explain why the SSA discounted strengths in North South's proposal and did not discount "unmatched" strengths in Dynamic's proposal.  ECF No. 17 at 14 (citing a page of the SSDD located at ECF No. 19-1 at 55).

[6]     Even if four strengths had been deducted (or discounted) from Dynamic's management approach, in accordance with plaintiff's view of a fair evaluation process, the resulting difference in even a simple count of significant strengths and strengths would continue to support the adjectival ratings received by North South and Dynamic for the management approach evaluation factor.

[7]     The GAO found that North South had not established that it was prejudiced by any errors in the agency's proposal evaluation and award decision.  ECF No. 1-2 at 8-9.  On this record, the court would agree.

except, perhaps, irreparable harm of a modest magnitude, weigh in plaintiff's favor, plaintiff's request for a TRO and preliminary injunction must be **DENIED**.

IV.    Conclusion

Accordingly,

(1)    Plaintiff's motion for a TRO and preliminary injunction, ECF No. 6, is **DENIED**;

(2)    On or before **January 31, 2019**, the parties shall **CONFER** and **FILE** a **Proposed Redacted Version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out; and,

(3)    On or before **January 31, 2019**, the parties shall **CONFER** and **FILE** a **Joint Status Report** proposing a schedule for further proceedings, if any, in this matter.

IT IS SO ORDERED.


s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge